Afternoon, it's Garrett v. Local 601 of IBEW. For the appellate, Mr. Martinkus. For the appellate, Mr. Bacchett. Is that the right way to pronounce that? Actually, it's Bacchett, Your Honor. Bacchett, thank you. May it please the Court? Counsel? The issue before this Court in the Garrett case is relatively straightforward and simplistic. The issue from which I appeal is the trial court's determination that my client, Mrs. Garrett, was not a person for whom the collective bargaining agreement was made. In other words, she was not a third-party beneficiary of the collective bargaining agreement. In the brief, I call attention to some of the provisions, and I think Section 303 of this agreement between the local union and the National Electrical Contractors Association is very telling. That particular section states the employer recognizes the union as the exclusive representative of all employees performing electrical work within the jurisdiction of the union for the purpose of collective bargaining in respect to rates of pay, wages, hours of employment, and other conditions of employment. And in this particular agreement, there was a specific provision in which any apprentice who was working as a wireman, a journeyman wireman, was to be under the direct supervision at all times of a journeyman wireman. That's basically the thrust of the case. We have brought the suit against the union because a company called Merit, who was the actual employer subject to the agreement, testified that, in fact, there were no journeyman wiremen to supervise. We had initially received a summary judgment in our favor, and then the trial court, on motion for reconsideration, reversed itself and found against us summarily as well. The basis for the court's ruling is that, as I mentioned, Sherry Garrett was not a third-party beneficiary of this collective bargaining agreement. And with all due respect to the trial court, the trial court is simply wrong in my view. There's no issue that, for purposes of determining who or what is a third-party beneficiary contract, or who is a third-party beneficiary, federal law preempts Illinois law for purposes of that definition. And that's set forth in the cases I cite in the brief, the U.S. Supreme Court case, the Evening News Association, Smith v. DCA Food Industries, Heckler case, Rawson case, and others. There's no issue in my mind. In most of those cases, the courts actually held that the actual members of the union were third-party beneficiaries to the collective bargaining agreement or the inside agreement. And if you think about it, I mean, if a collective bargaining agreement is not a third-party beneficiary contract, I would submit to you there is no third-party beneficiary contract. The union in and of itself is no individual or separate identity separate and apart from its members. The union is simply the conduit by which the union members receive benefits, receive bargain for wages, and the like. But there's no difference in this particular case. The trial court, for whatever reasons, elected to use the case of Gallagher, which was an Illinois case, in terms of defining what is a third-party beneficiary contract. Gallagher was an ERISA case. But again, I would submit to the court, notwithstanding there's complete and total federal preemption with respect to the application of federal law, even though under Charles Dow Box Company v. Courtney, there's concurrent jurisdiction, even applying Illinois law, I think, clearly would show that this is a third-party beneficiary contract. There's no independent reason for the union to do these things. I cited in the brief multiple different provisions in the agreement. I'm not going to go through them here, which clearly identify the employees as beneficiaries in terms of wages, in terms of hours, in terms of first aid, and on and on and on. There's a plethora of different provisions that clearly relate to benefits that the employee is to receive. So, the real issue before the court is whether or not the trial court was correct in finding that Sherry Garrett was not a third-party beneficiary of this contract. And I submit to this court that clearly the trial court was not. It didn't apply federal law, although clearly preempted, in my opinion, with all due respect to the trial court. It even misapplied the Illinois case of Gallagher, which it reportedly relied upon, in deciding that Ms. Garrett was not a third-party beneficiary. So, that's really, in a nutshell, my argument. Unless the court has any questions, I don't really have much more. Thank you very much. Thank you. Mr. Beck. Good afternoon, Your Honors. I'll try to limit my comments to responding to many of those points raised by counsel. May it please the counsel. The first point I would like to address is that Ms. Garrett argues that federal law preempts Illinois law in these matters, and I certainly do not quarrel with that. At the same time, there isn't much federal law on this point. Neither side has cited a great deal of federal law to these courts. And obviously, it is tempting to look at Illinois law for persuasive authority, particularly on when someone is a third-party beneficiary and when they are not. If the court will look at the reply brief of Ms. Garrett, on pages 2 and 3, there's an argument about how it was inappropriate to look at Illinois law, and then Ms. Garrett proceeds to cite the out-got decision, which is an Illinois case, for the principles that Ms. Garrett finds persuasive. So I think that, though, if we are going to look at federal law on this point, we should look to see what the U.S. Supreme Court has to say on the subject. And in the Rawson case, the court says, We think it necessary to emphasize caution, lest the courts be precipitant in their efforts to find unions contractually bound to employees by collective bargaining agreements. If an employee claims that a union owes him a more far-reaching duty, he must be able to point to language in the collective bargaining agreement specifically indicating an intent to create obligations enforceable against the union by the individual employees. And you do not have that here. Ms. Garrett would have the court believe that all collective bargaining agreements are for the purpose of the employees, and therefore the employees are third-party beneficiaries in all collective bargaining agreements. But that's clearly not what the U.S. Supreme Court was saying in Rawson. They were saying that you have to look at it point by point. Obviously, any time you look at just about any collective bargaining agreement that you could review, there are going to be provisions which are beneficial to the union members and which are beneficial to the employees. But that doesn't mean that every employee is a third-party beneficiary of every collective bargaining agreement. And I think the evidence of that is that Ms. Garrett and I have never found a single case anywhere in the United States of America, federal or state law, where an employee was able to do what Ms. Garrett is alleging. I got hurt on the job, I was an apprentice, I don't feel as though my union was properly supervising me, so I'm suing the union. No one has ever been able to do it before in the United States. And I think that if that was something that, if every union member was a third-party beneficiary of their collective bargaining agreement, I think that you would see that all of the time. I think the court got it absolutely right as far as whether or not Ms. Garrett was a third-party beneficiary of the collective bargaining agreement. But even if the court had never reached that point, if we were to assume that Ms. Garrett was a third-party beneficiary of the contract, if you look at the agreement itself, any obligation to provide a journeyman wireman to supervise an apprentice was the obligation of the employer, in this case merit. There is nothing in the agreement to say that the union had that obligation to its apprentice. And in fact, if you look at the agreement as a whole, I won't go over the whole list, but on page 9 of my brief, starting on page 9 of my brief, there is an extensive list of all of the various things that the employer is supposed to do, including in Section 2.1, having not less than one journeyman on the premises of the job. So that was, according to Section 2.1, an obligation put upon the employer. And if you look at the section which states that an apprentice shall be supervised by one wireman, it is immediately followed by a statement as to you're not guaranteed an apprentice and the ratio of apprentices to wiremen that you're supposed to have. And if you look at the depositions that were submitted in this case in support of the various summary judgment motions, there was testimony that if an employer had their way, they'd have nothing but apprentices, because the apprentices are cheaper. And so there's a very specific system in this contract under which employers are told, you have to have a steward and you're going to pay for it. You have to have a certain number of journeymen and you're going to pay for it. You have to have a certain number of folks over 55 and you're going to pay for it. And then there's a provision that says, and you have to send all of this money to the union as a result of having had these union employees. And so any requirement that there be the supervision of an apprentice by a journeyman was placed upon the particular employer here. And I go into much more detail about that in my brief. If the court doesn't have any further questions today, I'll rest on my pleadings. I think we have none. Thank you. I appreciate your time. Judge, I'm going to rebut the point I think that's most important here, and that's his interpretation of the Rawson case. You need to look at that case. But what Rawson, the U.S. Supreme Court acknowledged, one, that an employee had the right to sue its union under Section 185. This section precedes the 301 section under the Act. As a third-party beneficiary to the collective bargaining agreement. So far you have those two things exactly as here. Then it says, so long as the union had broken a promise to the employer. Well, what was the promise in this case that the union broke to the employer? The union, the sole and exclusive agent, the sole entity that had the ability to bargain, reached its promise as set forth in the collective bargaining agreement to send a journeyman wireman whenever it sent an apprentice wireman to do the job. That's the exact promise that, in fact, this arrangement, this collective bargaining agreement creates. How did breaking that promise cause the injury? Because the promise conferred a direct benefit to the employee. How did it cause the injury? Because there was no supervision in the course of pulling wires. But there was a journeyman there. No, but not a journeyman wireman. What does pulling wire have anything to do with the voltage? It's the manner in which you pull wire. The journeyman telecommunications are phones, little things of that nature. This is heavy-duty wires. And how you pull on this stuff made a huge difference. She was not trained. She didn't know what she was doing. And as a result of her pulling this wire, this huge cable all day long, she was injured. But see, that's a proximal causation problem. I mean, we may have that problem if we ever reversed it. If we got to trial, that would be an issue for the court there. Can we have a doctor who can come in and testify? Yeah, as a direct result of this, this is what happened, and so forth. But we never got there because the court said we weren't a beneficiary of the collective bargaining agreement. Clearly, Rawson says we are. There's no question about that. And I believe Rawson clearly says, hey, look, a union can take on the duty. That's what Rawson says. Generally, if you don't have the union taking on these duties, you can't sue them. But if Rawson, in fact, says if you take on the duty, in this case, that's exactly what the union did. The union took on the duty to send a journeyman wireman to supervise at all times. That's the exact language in the collective bargaining agreement. Thank you. Thank you. We'll take the matter into advisement for recess.